Jefferson WILSON, Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD, Respondent.

Appeal No. 86–1143.

United States Court of Appeals, Federal Circuit.

Dec. 31, 1986.

Felix Stuckey, Stuckey & Johnson, Oakland, Cal., argued for petitioner. With him on the brief was Pamela Y. Price, of counsel.

Rita S. Arendal, Merit Systems Protection Bd., Washington, D.C., argued for respondent. With her on the brief were Llewellyn M. Fisher, Acting General Counsel, Mary L. Jennings, Associate General Counsel for Litigation, and Marsha E. Mouyal, Reviewer for Litigation.

Before FRIEDMAN, DAVIS, and SMITH, Circuit Judges.

FRIEDMAN, Circuit Judge.

The petitioner challenges the decision of the Merit Systems Protection Board (Board), 30 M.S.P.R. 54, that dismissed his appeal from his reassignment within the Postal Service because the reassignment was neither a reduction in grade nor a reduction in pay over which the Board had jurisdiction. We affirm.

I

The petitioner has been employed continuously since 1952 by the Post Office Department and its successor, the United States Postal Service. In August 1980, the petitioner was assigned to the position of Sectional Center Manager/Postmaster (Category VI) for the San Francisco Management Section Post Office. As Postmaster of San Francisco, the petitioner was classified as a Postal Career Executive Grade I and received a salary of $62,225.

Effective July 20, 1985, the petitioner was reassigned to the position of Sectional Center Manager/Postmaster (Category IV) for the Bakersfield, California Management Section/Post Office. In Bakersfield, as in San Francisco, the petitioner was classified as a Postal Career Executive Grade I and received the same salary of $62,225.

The petitioner appealed his reassignment to the Board. He described the reassignment as a reduction in grade and pay, alleged that the reassignment was based, in part, on age and race discrimination, and challenged the procedures through which the reassignment was made.

The regional director of the Board notified the petitioner that it appeared "questionable" whether the Board had jurisdiction over his appeal. He gave the petitioner the opportunity to submit additional evidence and argument on the jurisdictional issue. In response, the petitioner acknowledged that he was classified as a Postal Career Executive Grade I in both San Francisco and in Bakersfield, and that his annual salary of $62,225 was the same in both positions. The petitioner contended, however, that because his position title was changed from Sectional Center Manager/Postmaster (Category VI) to Sectional Center Manager/Postmaster (Category IV), the reassignment constituted a reduction in grade.

In support of this contention, the petitioner submitted a declaration from Kellsey Minor, a former specialist in compensation and job evaluation in the Postal Service, who stated that "in his opinion" the reassignment constituted a reduction in grade. The petitioner also pointed to the differences in level of responsibility between the Category VI position in San Francisco and the Category IV position in Bakersfield. In San Francisco, the petitioner was responsible for more than 9,000 Postal employees and administered a payroll of approximately $275 million. In Bakersfield, in contrast, the petitioner was responsible for less than 2,000 employees and administered a payroll of approximately $50 million.

The Postal Service moved to dismiss the petitioner's appeal for lack of jurisdiction, arguing that the petitioner had been reduced neither in grade nor in pay. The Postal Service submitted a declaration from Malcolm J. MacGregor, a manager in the compensation division of the Postal Service, stating that the petitioner had remained a Postal Service Career Executive Grade I employee with a salary of $62,225 before and after the reassignment. This declaration was supported by a government form used to document personnel action (Form 50) showing that the petitioner's grade and salary levels were the same in both assignments.

After reviewing the evidence, the Board, without a hearing, dismissed the appeal for lack of jurisdiction. The Board held that the petitioner had not been reduced in grade or pay through the reassignment. Although the Board acknowledged that the reassignment was a reduction in responsibility, it ruled that a mere reduction in responsibility, without a concurrent reduc-

tion in grade or pay, was not appealable to the Board. Moreover, the Board noted that although the petitioner's reassignment might in the future result in a reduction in grade or pay, "the possibility of that future occurrence, and the reduced prospects for future career advancement, are not matters appealable to the Board."

## II

A. The Board has "only that jurisdiction conferred upon it by Congress." *See Manning v. Merit Systems Protection Board,* 742 F.2d 1424, 1426 (Fed.Cir.1984); *Thomas v. United States,* 709 F.2d 48, 49 (Fed.Cir.1983). Accordingly, the Board has authority to hear appeals only from the types of actions specifically enumerated by law, rule, or regulation. 5 U.S.C. § 7701(a) (1982); *see Rose v. Department of Health and Human Services,* 721 F.2d 355, 356 (Fed.Cir.1983).

The petitioner in the present case is a preference eligible employee of the Postal Service. *See* 5 U.S.C. § 2108(3) (1982). Under 5 U.S.C. sections 7511(a)(1)(B), 7512(3) and (4), and 7513(d), a preference eligible employee may appeal to the Board from "a reduction in grade" and "a reduction in pay." Reassignments that do not reduce an employee's grade or pay are not appealable to the Board. *See Jacob v. Department of Justice,* 22 M.S.P.R. 277 (1984); *Brown v. Department of Justice,* 20 M.S.P.R. 524 (1984).

Although the petitioner acknowledges that he was classified as a Postal Career Executive Grade I and received a salary of $62,225 before and after the reassignment from San Francisco to Bakersfield, he contends that the reassignment nonetheless constituted a reduction in grade and pay for two reasons: (1) it reduced his responsibility, and (2) it reduced his pay because he will receive a smaller yearly bonus in Bakersfield than he would have received in San Francisco. In addition, the petitioner challenges the Board's failure to hold a hearing on the question whether the Board had jurisdiction over his appeal.

### B. *Reduction in Grade.*

1. Before exploring the question whether the petitioner has been reduced in grade, it is necessary to describe the system under which the grades of executives in the Postal Service are determined. The Postal Reorganization Act of 1970, Pub.L. No. 91–375, 84 Stat. 719 (codified as amended at 39 U.S.C. § 101 *et seq.* (1982)), established the Postal Service as an "independent establishment of the executive branch." 39 U.S.C. § 201 (1982). This Act evidenced "the Congressional determination that postal personnel matters in general, and employee compensation in particular, should be set by the Postal Service and not the Congress." *See Sprague v. United States,* 677 F.2d 865, 866 (Ct.Cl.1982).

The Postal Service now is an independent organization that is subject to only limited application of federal employment laws. 39 U.S.C. § 410(a) (1982); *see Bredehorst v. United States,* 677 F.2d 87, 88–89 (Ct.Cl. 1982). Pursuant to the authority granted to it by Congress, the Postal Service has created the Postal Career Executive Service for its upper level management positions. Like the Senior Executive Service, a system Congress provided in the Civil Service Reform Act of 1978 for certain senior employees in the executive branch, the Postal Career Executive Service is designed to promote flexibility in executive assignments to enable the agency to accomplish its mission in an effective and expeditious manner. *See* 5 U.S.C. § 3131 (1982) (the purpose of the Senior Executive Service is "to ensure that the executive management of the Government of the United States is responsive to the needs, policies, and goals of the Nation and otherwise is of the highest quality.").

In order to promote needed flexibility in executive assignments, the Postal Career Executive Service consists of only two grade levels, grades I and II. *See* "Postal Career Executive Service (PCES)," 6 *Postal Employee & Labor Relations Manual* 380 (May 20, 1981). Grade II includes the highest ranking officials in the Postal Service, such as the Postmaster General, the Gener-

al Counsel, and the Chief Inspector. Grade I includes, but is not limited to, all Sectional Center Managers/Postmasters.

Within Grades I and II, positions are not classified by grade. According to the Postal Service's Employee and Labor Relations Manual:

> Positions in the [Postal Career Executive Service] are in two levels: [Postal Career Executive Service] I and [Postal Career Executive Service] II. Within each of these levels, positions and executives in the [Postal Career Executive Service] are gradeless. This *gradeless* system allows management the flexibility to best match an executive's ability or potential with the Postal Service's staffing needs.

*Id.* (emphasis in original).

2. The petitioner was classified as a Postal Career Executive Grade I both before and after the reassignment from San Francisco to Bakersfield. The petitioner contends, however, that the reassignment resulted in a reduction in grade because it changed his status from Category VI in San Francisco to Category IV in Bakersfield.

The terms Category VI and Category IV incorporated in the position title of Postmaster refer to the rankings of the sectional centers rather than to the grade of the managers in charge of them. The categories are based on a variety of factors, such as the size of the post office, the size of the population served, and the revenues received. Although the petitioner's position title was changed from Postmaster (Category VI) in San Francisco to Postmaster (Category IV) in Bakersfield, he was a Grade I Postal Executive in both assignments. The Board correctly held that the change in the category of the petitioner's position did not constitute a reduction in grade.

3. The petitioner argues, however, that the reassignment from San Francisco to Bakersfield was a reduction in grade because it reduced his responsibility, since in San Francisco he was responsible for more than 9,000 Postal employees and administered a payroll of approximately $275 mil-

lion, while in Bakersfield he was responsible for fewer than 2,000 employees and administered a payroll of approximately $50 million. A reduction in responsibility without a concurrent reduction in grade or pay, however, is not appealable to the Board. *Cf. Thomas v. United States,* 709 F.2d 48, 49 (Fed.Cir.1983) (reassignment not within Board's jurisdiction where employee transferred from position of Supervisory Contract Specialist (GS–13, step 4) to position of Contract Specialist (GS–13, step 4)); *Hennessey v. United States Postal Service,* 28 M.S.P.R. 127 (1985) (reassignment without reduction in grade or pay not within Board's jurisdiction).

Prior to the Civil Service Reform Act of 1978, preference eligible employees had a right to appeal to the Board's predecessor a "reduction in rank." *See* 5 U.S.C. § 7511 (1976); *Russell v. Department of the Navy,* 6 M.S.P.R. 698, 704 (1981). The reduction-in-rank standard required a "determination of whether a personnel action causes an employee to be further down in the organizational structure than before." *Russell,* 6 M.S.P.R. at 705. This standard was unsatisfactory, however, because it allowed employees "to appeal minor, unimportant personnel actions." *Id.* at 707.

The 1978 Act replaced the reduction-in-rank standard with the present reduction-in-grade test. *See* 5 U.S.C. §§ 7511(a)(3), 7512 (1982). The purpose of the change was to

> increase the flexibility of agencies to assign employees to positions and duties where they are needed without having to take an adverse action against an employee when the job title or duties have changed, but the grade has not.

S.Rep. No. 969, 95th Cong., 2d Sess. 49–50 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2771–72.

The petitioner's duties and responsibilities (and therefore his rank) may have changed after his reassignment from San Francisco to Bakersfield. He had no right, however, to appeal to the Board a reassignment that had an effect on rank but did not

result in a reduction in grade. The Board therefore correctly refused to accept jurisdiction of the petitioner's appeal on the basis that the reassignment from San Francisco to Bakersfield resulted in a reduction in responsibility.

4. The petitioner maintains, however, that under the position classification system of the Postal Service, the reassignment from a Category VI to a Category IV facility constituted a reduction in grade. The petitioner relies on 5 U.S.C. § 7511(a)(3), which states that " 'grade' means a level of classification under a position classification system." The petitioner further points to the position classification system principles set out in 5 U.S.C. Chapter 51, which provide that:

> The basis for determining the appropriate grade is the level of difficulty, responsibility, and qualification requirements of the work of the class.

5 U.S.C. § 5106(b) (1982).

According to the petitioner, under the position classification principles of 5 U.S.C. Chapter 51, his reassignment from San Francisco to Bakersfield was a reduction in grade because it reduced the "difficulty" and "responsibility" of his position. The flaw in the argument is that 5 U.S.C. Chapter 51 does not apply to the petitioner.

As noted, *see supra* p. 1579, the Postal Service is an independent organization that is subject to only limited application of federal employment laws. 39 U.S.C. § 410(a) (1982). Preference eligible employees of the Postal Service do not have the same rights as employees in the competitive service, but have only the limited rights granted by the Veterans' Preference Act. *See Bredehorst v. United States*, 677 F.2d 87, 88–89 (Ct.Cl.1982). The only rights the latter Act grants to Postal Service employees are those relating to the adverse actions specified in 5 U.S.C. §§ 7511–7513, namely a removal, suspension for more than 14 days, furlough of 30 days or less, or reduction in grade or pay. *See Bredehorst*, 677 F.2d at 89. These rights do not include the application of the classification principles in 5 U.S.C. Chapter 51 to show that the reduction of the difficulty and responsibility of a new position was "a reduction in grade."

### C. *Reduction in Pay.*

1. The petitioner received the same salary in both San Francisco and Bakersfield. At oral argument, however, the petitioner contended that the reassignment reduced his pay because he would receive a smaller yearly bonus in Bakersfield than he would have received in San Francisco.

The term "pay," as applicable to this case, is defined as "the rate of basic pay fixed by law or administrative action for the position held by an employee." 5 U.S.C. § 7511(a)(4) (1982). Because Congress intended adverse action rights such as the right to appeal a reduction in pay to be given a narrow construction, *see Grasso v. Internal Revenue Service*, 657 F.2d 224, 225–26 (8th Cir.1981) (*citing* S.Rep. No. 969, 95th Cong., 2d Sess. 49, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2771), courts have interpreted the term "basic rate of pay" restrictively. Thus, an employee's basic rate of pay includes neither retirement benefits, *see Grasso*, 657 F.2d at 225–26, nor premium pay, *see Spinks v. United States Postal Service*, 621 F.2d 987 (9th Cir.1980); *Triponi v. United States*, 224 Ct.Cl. 503, 633 F.2d 933 (1980).

Like premium pay for a lower level Postal employee, bonuses for Postal executives are additional compensation above and beyond the executive's basic salary. Premium pay is designed to "offset the burdens of working generally disadvantageous hours," *Spinks*, 621 F.2d at 988, while bonuses are designed to reward an executive for commendable performance, *see infra* p. 1582. Neither premium pay nor bonuses are part of the employee's rate of basic pay under 5 U.S.C. § 7511(a)(4). Accordingly, we conclude that even if the petitioner's yearly bonus potentially may be smaller in Bakersfield than it would have been in San Francisco, that is insufficient to establish that he has been reduced in pay.

2. Moreover, even assuming *arguendo* that the petitioner's yearly bonus did constitute part of his basic rate of pay, we are unconvinced that the petitioner's yearly bonus would be reduced following the reassignment.

At oral argument, we requested the parties to file supplemental memoranda discussing the bonus question. According to the government's submission, which the petitioner has not challenged, performance awards, or bonuses, are made to Postal executives on the basis of the executive's yearly performance rating. There are three possible ratings a Postal executive can receive: "not eligible for performance award," "eligible for performance award," and "outstanding performance." *See* Management Instruction, FY 1984 Postal Career Executive Service Performance Evaluation, EL–350–83–7 (August 29, 1983). In fiscal year 1985, Postal executives rated eligible received an award of $2,000 to $4,000, and those rated outstanding received an award of $4,200 to $5,000. Postal executives rated not eligible receive no monetary award.

Each year, a Postal executive is asked to set objectives in two areas: operational/program objectives and human resources development objectives. These objectives are reviewed and approved by the Postal executive's immediate supervisor. At the end of the year, the executive is rated on how well he has achieved those objectives, and also on his managerial effectiveness. *Id.* The rating is given by the Postal executive's immediate supervisor and must be approved by the Postal executive's next higher level manager. This rating serves as the basis for the executive's yearly bonus.

The Postal Service submitted a declaration in lieu of affidavit, *see* 28 U.S.C. § 1746 (1982), from Stephen A. Moe, the Director of the Office of Selection and Evaluation for the Postal Service and former Director of the Office of the Postal Career Executive Service. According to Mr. Moe, the petitioner's ability "to receive a performance award based on a rating of eligible or outstanding, or no performance award based on a rating of ineligible, would not have differed whether he was Postmaster/MSC Manager at the Bakersfield Post Office or at the San Francisco Post Office."

The petitioner has not presented anything that directly refutes this statement. Performance awards are based on the extent to which an executive achieves his operational/program and human resources development objectives and on the executive's managerial effectiveness. The petitioner could achieve his yearly objectives and demonstrate his managerial effectiveness just as well in Bakersfield as in San Francisco. There is no reason to believe that the amount of the petitioner's bonus will be any different in Bakersfield than it would have been in San Francisco. The petitioner's contrary conclusion is mere speculation.

The petitioner further contends that although the reassignment did not reduce his pay, his "salary in Bakersfield would have been reduced over time." The fact that an employee's salary may be reduced at some future date is insufficient to establish a reduction in pay. *See Garbacz v. United States,* 656 F.2d 628, 633–34 (Ct.Cl.1981).

D. *Lack of a Hearing.* Finally, the petitioner contends that the Board should have held a hearing on the issue whether the reassignment from San Francisco to Bakersfield constituted a reduction in grade or pay.

Although 5 U.S.C. § 7701(a) gives employees subject to adverse personnel actions the right to a hearing on disputed factual issues involving the merits, *see Crispin v. Department of Commerce,* 732 F.2d 919, 922–23 (Fed.Cir.1984), that right exists only if the Board has jurisdiction. *See Rose v. Department of Health and Human Services,* 721 F.2d 355, 357 (Fed. Cir.1983). There is no statutory requirement that the Board hold a hearing on the threshold issue of jurisdiction. *See Manning v. Merit Systems Protection Board,* 742 F.2d 1424, 1427 (Fed.Cir.1984). *Cf. Arnett v. Kennedy,* 416 U.S. 134, 163, 94 S.Ct.

1633, 1648, 40 L.Ed.2d 15 (1973) (a litigant's procedural right of review is defined by the statute providing for such right).

We held in *Manning*, 742 F.2d at 1428, that it would be "appropriate for the [Board] to honor a request for hearing where a petitioner's allegations raise non-frivolous issues of fact relating to jurisdiction which cannot be resolved simply on submissions of documentary evidence." We conclude, however, that in this case the Board properly resolved the factual issues relating to jurisdiction on the basis of the documentary evidence that was submitted to it, and therefore was not required to hold a hearing.

In response to the Board's 1985 notice to the petitioner that it was "questionable" whether the Board had jurisdiction over his reassignment and directing him to submit evidence on the question, the petitioner submitted a declaration from Kellsey Minor, a former specialist in compensation and job evaluation in the Postal Service, who stated that "in his opinion" the reassignment constituted a reduction in grade. Mr. Minor has been retired from the Postal Service since 1983 and had not had any direct experience with the Postal Career Executive Service.

In response, the government submitted a declaration by Malcolm MacGregor, a general manager of the compensation division of the Postal Service's employee and labor relations department, who stated that the petitioner's grade in the Postal Career Executive Service remained the same (Grade I) following the petitioner's transfer to Bakersfield. The government also submitted (1) a Form 50 (a government form used to document personnel action) showing that the petitioner received a salary of $62,225 and was classified as a Postal Career Executive Grade I both before and after his reassignment, and (2) the Postal Service's *Employee and Labor Relations Manual*, which indicates that (a) the Postal Career Executive Service is divided into only two grades, and (b) within Grade I and Grade II the Postal Career Executive Service is a gradeless system. *See supra* pp. 1578, 1580.

In light of the Postal Service's substantial evidence that the petitioner had not been reduced in grade, the declaration of Mr. Minor that the reassignment constituted, in his opinion, a reduction in grade was insufficient to "raise non-frivolous issues of fact relating to jurisdiction which [could not] be resolved simply on submissions of documentary evidence." *See Manning v. Merit Systems Protection Board*, 742 F.2d at 1428. The mere conclusory allegation by Mr. Minor, whose familiarity with the 1985 practices of the Postal Career Executive Service was unclear, that the petitioner had been reduced in grade, without any supporting explanation for the conclusion, was insufficient to require the Board to conduct a hearing on the issue. *Cf. Frazier v. Department of Transportation, FAA*, 26 M.S.P.R. 190, 192 (1985) (employee entitled to hearing where he presented specific and detailed evidence on the jurisdictional issue).

## CONCLUSION

The decision of the Merit Systems Protection Board dismissing the petitioner's appeal for lack of jurisdiction is affirmed.

AFFIRMED.